# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Attorney General JOSH SHAPIRO, | : : : | |
| Plaintiff, | : : | CIVIL ACTION Case No. 18-mc-00169 |
| v. | : : : : | Original Case No. 14-cv-7139 |
| THINK FINANCE, LLC, et al., | : : | |
| Defendants. | : | |

## MEMORANDUM

**JOYNER, J.**                                                 **SEPTEMBER 26, 2018**

Before the Court are Movants Plain Green, LLC ("Plain Green") and Joel Rosette's ("Rosette") Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action (Doc. No. 1) and their supplement thereto (Doc. No. 3); Defendant Think Finance's Memorandum in Opposition thereto (Doc. No. 4); and Movants' Reply in Support thereof (Doc. No. 5). For the reasons below, the Motion to Quash is GRANTED.

## I. BACKGROUND

In the instant Motion, Movants, Non-Parties Plain Green, LLC ("Plain Green"), a consumer lending business wholly owned and operated by the federally recognized Indian Tribe, Chippewa Cree Tribe of the Rocky Boy's Reservation (the "Tribe"), and its former CEO Joel Rosette ("Rosette"), ask this Court to quash

1

subpoenas issued to them by Think Finance, Defendant in the underlying case, Commonwealth of Pennsylvania v. Think Finance, Inc., et al. (Motion to Quash at 2, Doc. No. 1; Movants' Ex. B, ¶¶ 2-4, 9). While not a Defendant in this matter, Plain Green is an entity of one of multiple Indian tribes used by Think Finance in connection with the Office of the Attorney General of Pennsylvania's ("OAG's") allegations of illegal lending practices involving high-interest rate, short term loans made to Pennsylvania residents over the Internet. Commonwealth of Pennsylvania by Shapiro v. Think Finance, Inc., No. 14-cv-7139, 2018 WL 637656, at *1 (E.D. Pa. Jan. 31, 2018), (Doc. No. 214). OAG alleges Defendants partnered with Native American tribes in so-called "rent-a-tribe" schemes, where the "tribal entity would act as the nominal lender and the Defendants, the defacto lender, would avoid state regulation under the cloak of the tribe's sovereign immunity." Id. at 4-5. The OAG seeks to render the Chippewa Cree Tribe's loans illegal under Pennsylvania law." (Opp. to Motion to Quash at 1, Doc. No. 4). To aid in their defense, Think Finance issued Rule 45 subpoenas seeking testimony from Plain Green and Rosette. Id.

Plain Green and Rosette move this Court to quash Think Finance's subpoenas under Federal Rule of Civil Procedure 45, or in the alternative, to issue a protective order under Federal Rule of Civil Procedure 26 (c)(1) on three grounds. First,

2

Movants argue that this Court does not have jurisdiction to enforce the subpoenas because the Tribe's sovereign immunity from legal proceedings extends to Plain Green as an "arm of the tribe" and to Rosette in his "official capacity." Second, Movants argue that they have not waived their sovereign immunity. Third, Movants argue that their motion is properly before this Court because the underlying action is pending in this district.

Think Finance opposes Plain Green's motion on three grounds. First, Think Finance argues Plain Green's waiver of immunity regarding contracts between the two parties should make their subpoenas for testimony enforceable. Second, they argue that Plain Green's tribal immunity does not extend to Rosette because they seek to depose him in his "individual capacity." Third, they argue their need for information to develop a defense against the OAG's allegations outweighs Plain Green's need for sovereign autonomy and protection from discovery requests. Finally, they argue Plain Green's motion is procedurally defective because it should have been filed in the district where compliance was sought, Montana.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 limits the scope of discovery in civil suits to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.

3

26(b)(1). "'Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed.'" In re Domestic Drywall Antitrust Litigation, 300 F.R.D. 234, 238 (E.D. Pa. 2014) (quoting Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). See Frank v. Honeywell Int'l, Inc., No. 15-mc-00172, 2015 U.S. Dist. LEXIS 106453, at *12 (E.D. Pa. Aug. 12, 2015) (stating that "[c]ourts have significant discretion when resolving discovery disputes. Taggart v. Wells Fargo Home Mortg., Inc., No. 10-cv-00843, 2012 U.S. Dist. LEXIS 139469, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012) (citing Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000))").

Rule 26 (c)(1) can be invoked to shield the target of a discovery request from "annoyance, embarrassment, oppression, or undue burden or expense." When discovery is sought from a non-party, "'[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience.' See Avago Techs. U.S., Inc. v. IPtronics, Inc., 309 F.R.D. 294, 297 (E.D. Pa. Sept. 15, 2015) (citing Frank, 2015 U.S. Dist. LEXIS 106453, at *4)." Saller v. QVC., Inc., 2016 LEXIS 82895, at *8-9 (E.D. Pa. June 24, 2016).

Federal Rule of Civil Procedure 45 correspondingly protects non-parties from subpoenas to testify. "A non-party may seek from the court protection from discovery via the overlapping and

4

interrelated provisions of both Rules 26 and 45." Frank, 2015 U.S. Dist. LEXIS 106453, at *4 (quoting In re Mushroom Direct Purchaser Antitrust Litig., No. 06-cv-0620, 2012 U.S. Dist. LEXIS 12319, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012). "A subpoena served under Rule 45 must fall within the scope of proper discovery under Rule 26 (b)(1)." Saller, 2016 U.S. Dist. LEXIS 82895, at *8. After the subpoenaing party demonstrates the information it seeks is relevant to a party's claim or defense, the person objecting to the subpoena has the burden to establish grounds, under Rule 45, for the court to quash the subpoena. Id. Rule 45 directs that a court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45 (c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; (iv) subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A). The party seeking Rule 45 protection has a higher burden of "demonstrating that an enumerated need for quashing the subpoena exists." Saller, 2016 U.S. Dist. LEXIS 82895, at *8. Rule 26 (c) is less stringent, requiring the objecting party to show "good cause." Cipollone v. Ligget Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

Once a requesting party has shown the information they seek is relevant under Rule 26 (b), a court may balance the

"'potential hardship to the party subject to the subpoena'" against the requesting party's need. Avago Techs. U.S., Inc. v. IPtronics Inc., 309 F.R.D. 294, 297 (E.D. Pa. September 15, 2015) (quoting Truswal Sys. Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987)). A court balancing undue hardship against need for the requested information may consider multiple factors, including the "(1) relevance of the requested materials, (2) the party's need for the documents, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the recipient's status as a non-party." Frank, 2015 U.S. Dist. LEXIS 106453, at *4.

**III. DISCUSSION**

*A. Sovereign Immunity*

1. Sovereign Immunity of Plain Green

To enforce a subpoena, a court must have jurisdiction. See U.S. Catholic Conference v. Abortion Rights Mobilization, 487 U.S. 72 (1998) (stating "the subpoena power of a court cannot be more extensive than its jurisdiction"). A court does not have jurisdiction to enforce a subpoena where the subpoenaed "entity enjoys immunity from suit," and where immunity has not been effectively waived. Howard v. Plain Green, LLC, No. 17-302, 2017 U.S. Dist. LEXIS 137229 (E.D. Va. Aug. 7, 2017). See Kiowa

Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998) (confirming that "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity"). See Puyallup Tribe v. Dept. of Game of State of Wash., 433 U.S. 165, 172 (1977) ("explaining that without effective waiver of tribal immunity or consent to suit, a "court may not exercise jurisdiction over a recognized Indian tribe"). "To enjoin an act, the court must have jurisdiction of the [non-party] so enjoined. . . ." Walker Bank & Trust Co., 456 F.2d 1352, 1354 (10th Cir. 1972). "Tribal immunity is itself a jurisdictional issue." Bonnet v. Harvest Holdings, 741 F.3d 1155, 1158 (10th Cir. 2014).

The parties do not contest that Plain Green is an "arm of the Tribe" sharing the Tribe's sovereign immunity from suit. (Motion to Quash at 6, Doc. No. 1). Therefore, an assessment of whether Plain Green is sufficiently affiliated with the Tribe to claim immunity under the Ransom factors is unnecessary. See Ransom v. St. Regis Mohawk Educ. & Community Fund, 86 N.Y.2d 553, 559 (N.Y. 1995) (listing nondispositive factors helpful for determining when a corporation is sufficiently intertwined with a federally recognized Indian tribe to be considered "an arm of the tribe" and assert the tribe's sovereign immunity from suit).[1]

---

[1] Even if Plain Green's immunity were contested by Think Finance, sovereign immunity extends to Plain Green as an "economic arm" of the Tribe because, as Plain Green's records show, its "purpose is to engage in commercial

Notedly, tribal immunity from suit encompasses third-party subpoenas. "A 'suit,' for purposes of application of tribal sovereign immunity, includes third-party subpoenas served on a tribe." Dillon v. BMO Harris Bank, N.A., 2016 U.S. Dist. LEXIS 13433, at *7 (N.D. Ok. 2016). See Bonnet v. Harvest (U.S.) Holdings, Inc., 741 F.3d 1155, 1159-60 (10th Cir. 2014) "tribes are immune from 'suit' under Kiowa, 'suit' includes 'judicial process' under Murdock [United States v. Murdock Mch. & Eng'g Co. of Utah, 81 F.3d 922 (10th Cir. 1996)], and a subpoena duces tecum is a form of judicial process under Becker [Becker v. Kroll, 494 F.3d 904(10th Cir. 2007)])". Id. See Commonwealth of Pennsylvania v. Think Fin., et. al., Pennsylvania v. Think Fin., Inc., No. 1:18-mc-0024, 2018 U.S. Dist. LEXIS 133990 (W.D. La. Aug. 8, 2018) (holding that MobiLoans, an arm of a federally recognized Tribe, was immune from Think Finance's third-party subpoena to testify). See Alltel Communications v. DeJordy, 675 F.3d 1100 (8th Cir. 2012) (stating that "[A] subpoena served on

---

activities that generate revenues for the Tribe, serve the social, economic, educational, and health needs of the Tribe, and 'enhance the Tribe's economic self-sufficiency and self-determination.'" (Motion to Quash at 6, Doc. No. 1). As Howard found, "[b]ecause the uncontroverted evidence shows that Plain Green was created and is largely controlled by the Tribe, it should be considered "an arm of the tribe," and thus entitled to tribal immunity." Howard v. Plain Green, LLC, No. 2:17-cv-302, 2017 U.S. Dist. LEXIS 137229, at *6-7 (E.D. Va. 2017). See Cook v. AVI Casino Enters., 548 F.3d 718, 725 (9th Cir. 2008) (explaining "whether tribal immunity extends to a tribal business entity depends not on 'whether the activity may be characterized as a business, which is irrelevant under Kiowa, but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe'" (quoting Allen v. Gold Country Casino, 464 F. 3d 1044 (9th Cir. 2006))).

a non-party Indian tribe is barred by tribal sovereign immunity").

The center of Think Finance's argument for enforcing their subpoenas is their claim that Plain Green waived sovereign immunity in contract agreements with them. (Doc. No. 4 at 5). To be effective, waiver "must be unequivocally expressed." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). Federally recognized Indian tribes are immune from judicial process "only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998). See Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024 (2014) (emphasizing that "it is fundamentally Congress's job, not ours, to determine whether or how to limit tribal immunity. The special brand of sovereignty the tribes retain- both its nature and its extent- rests in the hands of Congress. See United States v. Lara, 541 U.S. 193 (2004); United States v. Wheeler, 435 U.S. 313 (1978)).

We find Plain Green's waiver of immunity to be limited only to disputes concerning contract interpretation, arbitration, and breach of contracts between Movants and Think Finance. (Def's Ex. A at 41, Servicing Agreement §15 (f), License and Support Agreement §11.10, Marketing Agreement §11, Doc. 4-1; Def's Ex. B, License and Support Agreement §11.10 at 11, Marketing

9

Agreement §12(v) at 37, Doc. 4-2). See Def's Ex. B. at 40, Servicing Agreement §15(e) (stating the waiver of immunity applies only to actions "brought by [Think Finance], its successors and assigns (and not any other party) against [Plain Green] for claims of any kind arising under this Agreement").

The Tenth Circuit and the Supreme Court have managed to find waiver of tribal immunity "in the form of a valid contract or a tribal resolution. See, e.g., C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411 (2001) (contract); Merrion v. Jicarilla Apache Tribe, 617 F.2d 537, 540 (10th Cir. 1982) (tribal council resolution). Indeed, as the principle dissent in Michigan v. Bay Mills Indian Community makes clear, the Supreme Court has expressed hesitance about whether tribal sovereign immunity should extend to "commercial activity."[2]

Yet despite the precariousness of immunity for tribal entities' commercial activities, the Court has yet to overturn Kiowa's protection of immunity even for off-reservation

---

[2] Justice Scalia, dissenting in Michigan v. Bay Mills Indian Community, wrote, "In the wake of Kiowa, tribal immunity has also been exploited in new areas that are often heavily regulated by States. For instance, payday lenders (companies that lend consumers short-term advances on paychecks at interest rates that can reach upwards of 1,000 percent per annum) often arrange to share fees or profits with tribes so they can use tribal immunity as a shield for conduct of questionable legality. . . . As long as tribal immunity remains out of sync with this realty, it will continue to invite problems, including de facto deregulation of highly regulated activities; unfairness to tort victims; and increasingly fractious relations with States and individuals alike. The growing harms wrought by Kiowa's unjustifiable rule fully justify overruling it." Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024, 2052 (2014).

commercial conduct.  Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024, 2039 (2014).

In an analogous case, Dillon v. BMO Harris Bank, N.A., the district court granted a non-party Tribe's motion to quash a subpoena to testify.  The litigation underlying Dillon involved a plaintiff who sued a bank, BMO Harris, in connection with the bank's collection of repayment on a payday loan in a state where such loans were illegal.  2016 U.S. Dist. LEXIS 13433, at *2. The Tribe had made the loan and the bank had processed it.  Id. BMO Harris subpoaenaed the Tribe's Secretary/Treasurer, Shotton, seeking testimony to help them enforce an arbitration agreement in the payday loan contract between the plaintiff and the Tribe. The bank argued their third-party subpoenas on the Tribal officer were enforceable because Shotton had "waived the Tribe's right to assert tribal immunity" when he submitted declarations related to the underlying litigation and stated in them that he "could and would testify" to their facts.  Id. at *8.

Even when the subpoenaed tribal officer's testimony would have been relevant to the arbitration issue, and even when Shotton had made declarations stating that he "would testify" to the facts therein, id., the Dillon court found Shotton's waiver ineffective because the Tribe had not authorized him to waive their sovereign immunity: "the declarations themselves do not qualify as an express waiver of sovereign immunity. . .

11

.[I]mplied authority is not sufficient to constitute a waiver."
Id. at *17.

Here, by contrast, Think Finance is not attempting to enforce any contract provision between loan recipients and tribal lenders such as Plain Green. Therefore, the testimony it seeks from Plain Green and Rosette is not relevant (the underlying litigation relates to whether the loans Think Finance processed violate Pennsylvania law). Although authority to waive is not an issue here, applying Plain Green's contract-dispute waiver in any broader context would be similarly invalid. We will follow, as the Dillon court did, the strict rule that in the context of civil subpoenas of non-party tribal entities, only a 'clear, unequivocal waiver' will suffice to waive tribal sovereign immunity. Id. at 17. Think Finance has not established that the underlying litigation, for which they seek information to help their defense, involves any contract dispute with Plain Green. Since Plain Green did not expressly waive immunity beyond the context of contract disputes with Think Finance, we find they have not waived immunity from suit.

United States v. James, 980 F.2d 1314 (9th Cir. 1992) and United States v. Velarde, 40 F.Supp.2d 1314 (D.N.M. 1999) are also distinguishable because those courts found a waiver of tribal immunity in the context of criminal charges and constitutional confrontation rights. Unlike here, in those

12

cases the "tribes had willingly turned over relevant information to a prosecutor but refused to give similar relevant information to a criminal defendant." Dillon, 2016 U.S. Dist. LEXIS 13433, at *13. Those courts "found an express waiver of sovereign immunity based on the apparent authority of the tribal agencies or officers who had disclosed the information." Id. Again, here, Plain Green waived immunity within the scope of contracts with Think Finance; it had not previously disclosed relevant information to the government while withholding it from a criminal defendant.

Furthermore, a federal court recently upheld a tribal lending entity's sovereign immunity from subpoenas to testify. See Commonwealth of Pennsylvania v. Think Fin., et. al., 2018 U.S. Dist. LEXIS 133990 (W.D. La. Aug. 8, 2018) (granting a Tribal lending entity's motion to quash Think Finance's Rule 45 subpoena to testify where the movant, MobiLoans, was a "wholly owned entity of the Tribe," invested with "all the privileges and immunities of the Tribe," especially since "Congress has never abrogated tribal immunity for suits arising from tribal lending activity," Howard, 2017 U.S. Dist. LEXIS 137229, at *19, and where the Tribe did not waive immunity nor consent to suit).

Where Think Finance has not shown that the underlying litigation pertains to "interpretation of the contracts" between Think Finance and the tribal entity, (R. in Support of Motion to

13

Quash, Doc. No. 5 at 5), we find that the Tribe has not waived its immunity for purposes of Defendant's subpoenas requesting information to aid its defense against the OAG's allegations. (Motion to Quash at 5, Doc. No. 1). Furthermore, Congress has not limited tribal immunity in the context of lending entities that are "arms of the Tribe." Howard, 2017 U.S. Dist. LEXIS 137229, at *19. Therefore, as an "arm of the Tribe," Plain Green has not waived its sovereign immunity from suit; correspondingly, we do not have jurisdiction to enforce Think Finance's subpoenas to testify.

2. Sovereign Immunity of Rosette

Rosette is also immune because, contrary to Think Finance's characterization of their subpoena for him to testify in his "individual capacity," they seek his knowledge from his role as former CEO for Plain Green, when he was acting in an "official capacity." "[Tribal sovereign immunity]" extends to a tribe's subordinate economic entities and to tribal officials who are acting in their official capacity and within the scope of their authority. Bynon v. Mansfield, No. 15-00206, 2015 LEXIS 66684, at *3 (E.D. Pa. May 21, 2015). See Fletcher v. United States, 116 F.3d 1315, 1324 (10th Cir. 1997) (asserting "tribal immunity protects tribal officials against claims in their official capacity"). But "[a]n Indian tribe's sovereign immunity does not extend to an official when the official is acting as an

14

individual or outside the scope of those powers that have been delegated to him." Burrell v. Armijo, 456 F.3d 1159, 1174 (10th Cir. 2006) (quoting Tenneco Oil Co. v. Sac & Fox Tribe of Indians, 725 F.2d 572, 576 n.1 (10th Cir. 1984)).

Think Finance, in their own words, seeks information from Rosette that will help them "gather all evidence related to the benefits that the Chippewa Cree Tribe received from the Plain Green program and the details of how Plain Green managed its business to defend against the allegations the Pennsylvania Office of Attorney General is making." (Opp. to Motion to Quash at 9, Doc. No. 4). Thus, as in Bynon, the Tribe and Plain Green as an "arm of the Tribe," are the "real and substantial part[ies] in interest" Bynon, 2015 U.S. Dist. LEXIS 66684, at *3. Think Finance shows no evidence that Rosette was "not exercising the powers delegated to [him] by the sovereign or that the conduct in which [he] engaged was unrelated to [his] job duties; see also Murgia v. Reed, 338 F. App'x 614, 616 (9th Cir. 2009) ('If the Defendants were acting for the tribe within the scope of their authority, they are immune from Plaintiff's suit regardless of whether the words 'individual capacity' appear on the complaint')". Id. at *4. Think Finance inappropriately relies on Puyallup Tribe, Inc. v. Department of Game, 433 U.S. 165 (1977) to support their argument that Rosette is not immune from being deposed in his "individual capacity."

15

Puyallup declined to extend sovereign immunity to "individual tribal members" who were alleged to have been "fishing off the reservation." Id. at 168. Here, Think Finance seeks to inquire into Rosette's recollection of the relationship between Plain Green and Think Finance, his interaction with Think Finance when he was the tribal entity's CEO, and his "personal recollection of the benefits the Plain Green program returned to the Tribe." (Opp. to Motion to Quash at 4, Doc. No. 4). This amounts to information gathered in his "official capacity," and therefore he is protected by tribal sovereign immunity.

*B. Plain Green's Motion is Procedurally Valid*

Finally, Think Finance argues that even if Plain Green and Mr. Rosette possess sovereign immunity, their Motion to Quash is procedurally defective because it should have been filed where compliance is requested, the District of Montana. (Opp. to Motion to Quash at 4, Doc. No. 4). However, Plain Green argues in the alternative that this Court, on their showing of good cause, issue a Rule 26 (c)(1) protective order to protect them from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"Under Rule 26 (c), a party may move for a protective order in the court where the action is pending." Saller, 2016 LEXIS 82895, at *8. Although "Rule 45 (d)(3) indeed permits (and in some cases requires) the court for the district where compliance

16

with a subpoena is required to quash or modify the subpoena," "Rule 26(c)(1) itself contemplates that a non-party may seek judicial relief on matters relating to a deposition in *either* the court where the action is pending or in the court for the district where the deposition will be taken." Ernst v. Kauffman, No. 5:14-cv-59, 2016 WL 11261290, at *2-3 (D. Vt June 23, 2016). Furthermore, the Advisory Committee Notes to the 1991 amendment of Rule 45 explains that Rule 45 (d) is "not intended to diminish rights conferred by Rules 26-37 or any other authority." Mannington Mills, Inc. v. Armstrong World Industries, Inc., 206 F.R.D. 525, 529 (D. Del. 2002). "The Notes recognize that 45(c)(3), which authorizes the quashing of a subpoena, tracks the provisions of Rule 26(c)." Id. Thus, where Rule 26 (c) permits a district court where an underlying action is pending to decide on a motion to quash a discovery request, and where Rule 45 tracks Rule 26's protections, we may decide on Plain Green and Rosette's motion.

Lastly, Think Finance asks the court to balance their need for the requested testimony against Plain Green's claimed immunity. A "court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party." In re Domestic Drywall, 300 F.R.D. at 239; accord Frank Brunckhorst Co. v. Ihm, No. 12-mc-0217, 2012 U.S. Dist. LEXIS 151816, 2012 WL 5250399, at *5 (E.D.

17

Pa. Oct. 23, 2012) ("In the case of nonparty deponents, courts recognize that '[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents'"). Id.

However, most courts have declined to apply a balancing analysis where a non-party asserting sovereign immunity has moved to quash a civil subpoena to testify. Unlike in criminal cases where courts found that "specific [criminal] violations. . . could not be prosecuted without a limited waiver of the tribe's immunity," Catskill Dev., LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 89 (S.D.N.Y. 2002), the Catskill court declined to apply a balancing test when the objecting party was protected by sovereign immunity. "The same rule [barring enforcement of civil subpoenas issued to federal agencies] should apply here, since 'Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers,' such as the United States." Catskill, 206 F.R.D. 78 at 87. Therefore, a balancing analysis is not necessary.

## IV. CONCLUSION

Essentially, Plain Green and Rosette have not waived sovereign immunity in any legal proceeding beyond disputes between Plain Green and Think Finance relating to contract interpretation, arbitration of contract disputes, or contract

breach; none of which are at issue here.  Furthermore, we find Think Finance has not shown the information they seek from non-party Plain Green is relevant under the Rule 26 (b) discovery standard.  Additionally, Plain Green has met Rule 26 (c)'s "good cause" requirement for protection from disclosure because they have established they and their former CEO, Mr. Rosette, possess sovereign immunity as an "arm of the Tribe" commercial entity and as one of its employees in his "official capacity."  Furthermore, a balancing analysis is not required in the context of civil subpoenas of tribal entities who have not waived sovereign immunity.  Lastly, Plain Green's motion to quash relates to underlying litigation pending in this district, therefore it is appropriately before this court.  Plain Green's and Rosette's Motion to Quash is granted.